EUGENE RYU (SBN 209104)
Gene.Ryu@klgates.com
PENNY CHEN FOX, (SBN 280706)
Penny.Chen@klgates.com
PAUL SUH, (SBN 321028)
Paul.Suh@klgates.com
K&L GATES LLP
10100 Santa Monica Blvd.
8th Floor
Los Angeles, CA 90067
Telephone: 310.553.5000
Fax No.: 310.553.5001

Attorneys for Defendant,
MONROE OPERATIONS, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

WILSON CHUNG and LISA BURTON, individuals, on behalf of themselves and on behalf of all persons similarly situated,

Plaintiffs,

v.

MONROE OPERATIONS, LLC, a Limited Liability Company; and DOES 1 through 50, inclusive,

Defendants.

**Case No.**

**DEFENDANT MONROE OPERATIONS' NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § 28 U.S.C. §§ 1332(a), 1441, & 1446—DIVERSITY JURISDICTION**

**[28 U.S.C. §§ 1332(a), 1441, & 1446]**

Orange County Superior Court
Case No. 30-2022-01268754-CU-OE-CXC
(*originally filed in County of Orange Superior Court on July 7, 2022*)

**TO THE CLERK OF THE CENTRAL DISTRICT OF CALIFORNIA DISTRICT COURT:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. § 1441, Defendant Monroe Operations, LLC ("Monroe Operations" or "Defendant"), by and through its attorneys, K&L Gates LLP, hereby removes to this Court the action entitled, *Wilson Chung and Lisa Burton v. Monroe Operations, LLC,* and DOES 1 through 50, inclusive, Case No. 30-2022-01268754-CU-OE-CXC (the "State Court Action") from the Superior Court of the State of California, County of Orange. In support of this Notice of Removal of Action ("Notice"), Defendant states as follows:

## I. STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a State different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §1332(d). CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II. PLEADINGS, PROCESS, AND ORDERS

2. On July 7, 2022, Plaintiffs WILSON CHUNG and LISA BURTON ("Plaintiffs") filed a Class Action Complaint against Defendant and various Doe defendants in Orange County Superior Court: *Wilson Chung and Lisa Burton, individuals, on behalf of themselves and on behalf of all persons similarly situated, v. Monroe Operations, LLC, a Limited Liability Company; and DOES 1 through 50, inclusive*, Case No. 30-2022-01268754-CU-OE-CXC (hereinafter, the "Complaint.")

The Complaint asserts the following causes of action: 1) unfair competition in violation of California Business and Professions Code section 17200; 2) failure to pay minimum wages; 3) failure to pay overtime wages; 4) failure to provide required meal periods; 5) failure to provide required rest periods; 6) failure to provide accurate itemized statements; 7) failure to reimburse employees for required expenses; 8) failure to provide wages when due; and 9) failure to pay sick pay wages. Additionally, Plaintiffs seek attorneys' fees and various penalties under the California Labor Code.

3. On August 30, 2022, Plaintiffs served the Complaint on Defendant, through Defendant's agent for service of process, CT Corporation System. A copy of the Complaint is attached to the Declaration of Paul Suh ("Suh Decl.") as **Exhibit A**. (Suh Decl., ¶ 2, Exh. A.)

4. Along with the Summons and Complaint, Defendant has received a Civil Case Cover Sheet and Minute Order. These documents are attached to the Suh Decl. as **Exhibit B**. (Suh Decl., ¶ 3, Exh. B.)

5. Defendant filed and served its Answer to Plaintiffs' Class Action Complaint on September 28, 2022. Defendant's Answer is attached to the Suh Decl. as **Exhibit C**. (Suh Decl., ¶ 4, Exh. C.)

6. Pursuant to 28 U.S.C. § 1446(d), the attached Exhibits A - C constitute all process, pleadings and orders served on Defendant or filed or received by Defendant in this action. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in Orange County Superior Court or served by any party. (Suh Decl., ¶ 5.)

7. To Defendant's knowledge, no proceedings related hereto have been heard in Orange County Superior Court. (Suh Decl., ¶ 5.)

## III. TIMELINESS OF REMOVAL

8. This Notice of Removal is timely filed as it is filed within thirty (30) days of August 30, 2022, the date of service of the Summons and Complaint, and within one year from commencement of this action. *See* 28 U.S.C. § 1446(b).

## IV. CAFA JURISDICTION

9. As set forth below, this Court has jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) Defendant is not a state, state official or other governmental entity; (3) there is diversity between at least one class member and the sole named and served Defendant; and (4) the total amount in controversy for all class members exceeds $5,000,000.

### A. The Proposed Class Contains At Least 100 Members

10. 28 U.S.C. § 1332(d)(5)(B) sets forth that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." This requirement is easily met in the case at bar.

11. Plaintiffs seek to represent a class consisting of "[a]ll individuals who are or were previously employed by DEFENDANT in California, including any employees staffed with DEFENDANT by a third party, and classified as non-exempt employees at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court." (Compl., ¶ 4.) Plaintiff further seeks to represent a sub-class consisting of the same individuals but for a period beginning "three years prior to the filing of the complaint and ending on the date as determined by the Court." (Compl., ¶ 37.) Defendant employed approximately 1,694 putative class members to date. (*See* Declaration of Keith Thompson in Support of Defendant Monroe Operations, LLC's Notice of Removal to Federal Court ("Thompson

Decl.") ¶ 5.)

**B. Defendant is Not a Governmental Entity**

12. Under 28 U.S.C. § 1332(d)(5)(B), the CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

13. Defendant is a limited liability company, not a state, state official or other government entity exempt from the CAFA. (Thompson Decl., ¶ 8.)

**C. There Is Diversity Between At Least One Class Member And Defendant**

14. CAFA's minimal diversity requirement is satisfied, inter alia, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969). Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

15. An individual's domicile supporting diversity of citizenship can be determined by, inter alia, physical residency and place of employment. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *Lopez v. Costco Wholesale Corporation*, 2021 WL 487368, *2 (E.D. Cal. Feb. 10, 2021). The Complaint indicates that Plaintiffs worked in Orange County, California during their employments with Defendant. (Compl., ¶ 26.) Plaintiff Wilson Chung was employed by Defendant from approximately December 15, 2019 through approximately February 16, 2021. (Thompson Decl., ¶ 3.) Throughout his employment, including at the time of his termination from Defendant, Plaintiff Wilson Chung's address on file was in the city of Hayward, California. (Thompson Decl., ¶ 3.) Plaintiff Lisa Burton was employed by Defendant from approximately March 29, 2021 through approximately June 10, 2022. (Thompson Decl., ¶ 4.) Throughout her employment, including at the time of her termination from Defendant Plaintiff Lisa Burton's address on file was in the city of Fullerton, California.

(Thompson Decl., ¶ 4.) "[C]ourts have created a presumption in favor of an established domicile as against a newly acquired one." *Lew*, 797 F.2d at 751. Therefore, at the time Plaintiffs commenced this action and, upon information and belief, at the time of removal, Plaintiffs resided in the State of California. Therefore, Plaintiffs are citizens of California.

16. Conversely, Defendant is not a citizen of California. The citizenship of a limited liability company for diversity purposes is determined by examining the citizenship of each member of the company. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006.) The sole member of Monroe Operations, LLC is Monroe Capital Holdings, LLC, a Delaware limited liability company. (Thompson Decl., ¶ 8.) The sole member of Monroe Capital Holdings, LLC, is Navigator Acquiror, Inc., a Delaware corporation ("NAI"). (Thompson Decl., ¶ 8.)

17. At the time this action began in state court, NAI was, and still is, a corporation organized under the laws of the State of Delaware. (Thompson Decl., ¶ 9.) NAI's principal place of business is Nashville, Tennessee. Accordingly, NAI is deemed a citizen of the State of Delaware, where it is incorporated, and Tennessee, its principal place of business. *See Hertz Corp. v. Friend*, 130 U.S. 1181, 1192-93 (2010) (the principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities").

18. Accordingly, because NAI was, at the time of the filing of the Complaint, a citizen of Delaware and Tennessee, Monroe Capital Holdings, LLC, is a citizen of Delaware and Tennessee. Similarly, it follows that Monroe Operations, LLC, with Monroe Capital Holdings, LLC as its sole member, is a citizen of Delaware and Tennessee. *See Johnson*, 437 F.3d at 899.

19. No other party has been named or served as of the date of this removal. The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("[f]or purposes of removal under this chapter, the

citizenship of defendants sued under fictitious names shall be disregarded").

20. Accordingly, the named Plaintiffs are citizens of a State different from Defendant, and diversity exists for purposes of CAFA jurisdiction. See 28 U.S.C. §§ 1332(d)(2)(A), 1453.

**D. The Amount in Controversy Exceeds $5,000,000[1]**

21. Although Defendants deny all liability alleged in the Complaint, if damages or restitution were awarded on Plaintiffs' claims, the aggregate amount as to the putative class would exceed $5,000,000.[2]

22. This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which the amount in controversy for all class members in the aggregate exceeds $5,000,000. 28 U.S.C. § 1332(d).

23. The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The Supreme Court, in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547 (2014), recognized that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 81. Supporting evidence is required only if the plaintiff contests, or the court questions, the allegations

[1] The alleged damages calculations contained herein are for purposes of removal only. Defendant denies that Plaintiff is entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's alleged damages in this case.

[2] In order to establish the amount in controversy requirement is met, Defendant does not concede liability nor is it required to do so. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial. This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy."); *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("To establish the jurisdictional amount, Verizon need not concede liability for the entire amount, which is what the district court was in essence demanding by effectively asking Verizon to admit that at least $5 million of the billings were "unauthorized" within the meaning of the complaint."). Moreover, defenses do not affect the amount in controversy. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 295-296 (1938); *Riggins v. Riggins*, 415 F.2d 1259, 1261-1262 (9th Cir. 1969).

of the notice of removal. *Id.* at 89. Otherwise "the defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 82.

24. Here, Plaintiffs' allegations and claims make evident that they place more than $5,000,000 in controversy.

25. Plaintiffs alleges a cause of action for a violation of the Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200, *et seq*. (Complaint ¶¶ 46-60.) Alleging a UCL violation extends the statute of limitations on Plaintiff's wage and hour claims from three to four years from the filing of the Complaint, or going back to February 10, 2017. *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products Co*., 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

i. Plaintiff's Second and Third Causes of Action for Failure to Pay Minimum and Overtime Wages Places **$4,064,549** in Controversy

26. By way of their second and third causes of action, Plaintiffs and the putative class seek allegedly unpaid wages at minimum and overtime wage rates pursuant to California Labor Code §§ 510, 1194, 1197 and 1197.1. (Complaint ¶¶ 61-89.) Plaintiffs allege that they and the putative class members incurred unpaid minimum and overtime compensation because Defendant failed to compensate them for all hours worked, failed to pay overtime for hours worked in excess of eight hours per day and/or in excess of 40 hours in a week, and failed to properly calculate the regular rate of pay necessary to calculate premium overtime wage rates. (Complaint ¶ 29-38.) However, Plaintiffs do not state the amount of unpaid overtime they and the putative class allegedly worked each week.

27. Between July 7, 2018 (the beginning of the statutory period) through September 2, 2022, Defendant employed approximately 1,694 non-exempt workers in the state of California. These 1,694 non-exempt employees worked approximately

71,183 workweeks, and their average hourly rate was pay was approximately $23.40 per hour. (Thompson Decl., ¶ 5.)

28. If Plaintiffs prevail on their claim for minimum wages, they and the putative class may be entitled to recovery of all unpaid wages. Moreover, to determine the monetary amount in controversy for Plaintiffs' overtime claim, the total number of unpaid hours worked by Plaintiffs and the putative class that would have been considered, overtime hours is multiplied by one and one-half times their respective regular rates of pay rate in effect during the time the overtime was allegedly worked. *See* Cal. Wage Order 7-2001, §3(A)(1).

29. Plaintiffs do not allege a specific amount of damages for these causes of action, but assert that Defendant "inaccurately calculated the correct time worked and consequently underpaid the actual time worked," (Compl., ¶ 68) and that Defendant "permitted or suffered Plaintiffs and [putative class members] to work without paying them for all the time they were under Defendant's control." (Compl., ¶ 70). Plaintiffs further allege Defendant "implement[ed] a policy and practice that failed to accurately record overtime worked . . . and denied accurate compensation . . . for overtime worked[.]" (Compl., ¶ 81.) Even taking an extremely conservative approach of one hour of minimum wages and one hour of overtime wages per workweek, Plaintiffs' minimum wages claim places at least **$783,013** into controversy ($11.00 x 1 hour per week x 71,183 workweeks) and their overtime claim places at least **$2,498,523** into controversy ($23.40 x 1 hour per week 1.5 overtime premium x 71,183 workweeks).

30. Further, Plaintiffs seek liquidated damages under Labor Code § 1194.2 for Defendant's alleged failure to pay minimum wages to putative class members (Compl., Prayer for Relief at p.46). If they prevail, liquidated damages may be awarded in the amount equal to the unpaid minimum wages. Starting from January 1, 2018, the California state minimum wage has been at least $11 per hour.[3] Taking the same

[3] https://www.dir.ca.gov/iwc/minimumwagehistory.htm

conservative approach of one hour of unpaid minimum wage per week per employee, Plaintiffs seek to recover another **$783,013** from this action ($11 x 1 hour per week x 71,183 workweeks).

31. In sum, although Defendant vigorously denies Plaintiffs' allegations, including the alleged damages, if Plaintiffs were to prevail on their unpaid wages claim with respect to themselves and the putative class, the amount in controversy for this claim alone could be **$4,064,549**.

ii. Plaintiffs' Fourth and Fifth Causes of Action for Failure to Provide Meal and Rest Periods Places **$333,136** in Controversy

32. Plaintiffs' fourth and fifth causes of action allege that Defendant "from time to time failed to provide all the legally required off-duty meal breaks" and "from time to time required [Plaintiffs and putative class members] to work in excess of four (4) hours without being provided ten (10) minute rest periods." (Compl., ¶¶ 91, 95.) Moreover, Plaintiffs allege that Defendant "fail[ed] to compensate [Plaintiffs and putative class members] who were not provided a meal period" and, similarly, failed to provide the same to those "who were not provided a rest period." (Compl., ¶¶ 92, 96).

33. Indeed, Labor Code section 226.7 provides that an employer who fails to provide a 30-minute meal period for every five hours worked, or a 10-minute rest break for every four hours worked or major fraction thereof, can be liable for up to one meal period premium and one rest break premium per workday. Lab. Code § 226.7. Meal and rest break premiums are equivalent to one hour of the employee's regular rate of compensation. *Id.*

34. This cause of action increases the amount in controversy in this case. Plaintiffs allege these meal and rest period violations occurred from "time to time." A conservative interpretation of one missed meal period every two weeks and one missed rest period every two weeks places at least $333,136 into controversy. Specifically, one unpaid meal period premium per two weeks places $166,568 in controversy (71,183

workweeks x $23.40 x 1 hour per week x 10% violation rate (one out of 10 days in two workweeks)). (Thompson Decl., ¶ 5.) Similarly, one unpaid rest period premium per two weeks places another $166,568 in controversy (71,183 workweeks x $23.40 x 1 hour per week x 10% violation rate). (Thompson Decl., ¶ 5.) The sum of these amounts is **$333,136**.

iii. Plaintiffs' Sixth Cause of Action for Failure to Provide Accurate Itemized Statements Places **$4,532,000** in Controversy

35. Labor Code Section 226(a) provides that employers must, at the time of payment of wages, issue itemized wage statements which reflect nine (9) enumerated categories of information, including gross wages earned, total hours worked, deductions, net wages earned, inclusive dates of the pay period, name of the employee and name and address of the legal entity that is the employer.

36. Section 226(e) provides for a statutory penalty for violations of Labor Code § 226(a)'s wage statement requirements of $50 or actual damages per employee for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of $4,000. Cal. Lab. Code § 226(a). The statutory period for Labor Code § 226(e) penalties is one year. Cal. Code Civ. Proc. § 340.

37. In their sixth cause of action, Plaintiffs allege that "[f]rom time to time" Defendant failed to provide accurate itemized wage statements. (Compl., ¶ 100.) However, given the frequency at which Plaintiffs allege other wage-and-hour violations occurred, Plaintiffs' Complaint alleges inaccurate itemized wage statements were provided quite commonly. Thus, a more reasonable interpretation of Plaintiffs' theory is that a wage statement violation occurred in each pay period worked by putative class members during the statute of limitations period. (*See* Compl., ¶ 70, alleging Defendant "permitted or suffered Plaintiffs and [putative class members] to work without paying

them for all the time they were under Defendant's control.")

38. From July 7, 2021 through present, Defendant employed 1,133 non-exempt hourly workers. (Thompson Decl., ¶ 7.) Assuming that all of the putative class members in the statutory period reach the maximum penalty cap of $4,000 each and are not eligible to accrue any further penalties, Plaintiffs place at least **$4,532,000** into controversy (1,133 employees x $4,000).

iv. Plaintiffs' Seventh Cause of Action for Failure to Reimburse Employees for Required Expenses Places **$623,910** in Controversy

39. Plaintiffs also allege that Defendant failed to reimburse Plaintiffs and the putative class members for "costs related to using their personal cellular phones and personal home offices on behalf of and for the benefit of DEFENDANT." (Compl., ¶ 104.)

40. During the three-year statutory period for a claim under Labor Code section 2802, putative class members worked a combined 62,391 workweeks. (Thompson Decl., ¶ 6.) Even conservatively assuming Plaintiffs and the putative class are allegedly owed $10 per workweek worked, this claim places at least **$623,910** in controversy (62,391 workweeks x $10 in unreimbursed expenses per workweek).

v. Plaintiffs' Eighth Cause of Action for Failure to Pay Wages on Termination Places **$5,011,195** in Controversy

41. Plaintiffs also allege a claim for failure to pay wages upon separation of employment under California Labor Code § 203, which has a maximum statutory penalty of 30 days of wages per affected employee. The statute of limitations for a wage action is three years. *See* Cal. Code Civ. Proc. § 338.

42. Because waiting time penalties can arise with a failure to pay wages, and Plaintiffs allege that Defendant did "not tender[] payment of all wages" to separated putative class members, even minute amounts of unpaid wages could give rise to

waiting time penalties under Plaintiffs' allegations. (Compl., ¶ 58.) *See*, Cal. Lab. Code § 203.

43. Here, there are approximately 887 non-exempt, hourly employees in California whose employment with Defendant ceased within the three year statute of limitations. (Thompson Decl., ¶ 6.) Thus, assuming that each of these employees seek the maximum statutory penalty of 30 days of wages per employee, and using the average hourly rate of pay of $23.54 (*see* Thompson Decl. ¶ 6), the amount in controversy for Plaintiffs' and the putative class's waiting time penalties claim alone would be **$5,011,195** (887 terminated employees x 30 days x 8 hours x $23.54 per hour).

vi. Plaintiffs' Ninth Cause of Action for Failure to Pay Sick Wages Places **$1,746,900** in Controversy

44. Further, Plaintiffs allege that "as a matter of policy and practice, Defendant pays sick pay wages to Plaintiffs and [other putative class members] at the incorrect rate of pay" and alleges penalties under Labor Code sections 203, 210, and 218. (Compl., ¶¶ 117, 118.)

45. Potential penalties under Labor Code section 203 are already analyzed in the above section. In addition to those penalties, Plaintiffs' ninth cause of action purports to place in controversy the penalties they seek to collect under Labor Code section 210, which provides $100 for each paycheck which fails to pay an employee for all wages due. The statutory period for Labor Code section 210 penalties is one year.

46. From July 7, 2021 through present, Defendant employed 1,133 non-exempt hourly workers, who worked a combined 33,653 workweeks. These employees were paid once every two weeks, for a total of 17,469 pay periods. (Thompson Decl., ¶ 7.) Accordingly, Plaintiffs place **$1,746,900** in controversy under this claim (17,469 pay periods x $100 violation per pay period).

vii. Plaintiffs' Request for Attorney's Fees Places Another **$4,077,922** in Controversy

47. Finally, Plaintiffs seek reasonable attorneys' fees under California Code of Civil Procedure § 1021.5 and Labor Code § 218.5, which must also be considered in determining whether the jurisdictional limit is met. (Compl., Prayer, ¶ 9.) "Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)). The Ninth Circuit has "long held . . . that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). Accordingly, future attorney's fees are properly included in calculating the amount in controversy for CAFA removal. *Id.*

48. In California, it is not uncommon for an attorneys' fee award to be twenty-five to thirty percent of the total recovery in a class action. Even at 25%, Plaintiffs place another **$4,291,139** into controversy.

viii. Plaintiffs Place at Least **$20,389,612** into Controversy in Total

49. Although Defendant denies that Plaintiffs and the putative class are entitled to any relief, accepting Plaintiffs' claims as true, it is more likely than not that the amount in controversy in this case exceeds **$20,389,612:**

| | |
|---|---|
| Unpaid Minimum and Overtime Wages | $4,064,549 |
| Failure to Provide Meal Breaks | $166,568 |
| Failure to Provide Rest Breaks | $166,568 |
| Failure to Provide Accurate Itemized Statements | $4,532,000 |
| Failure to Reimburse Expenses | $623,910 |
| Failure to Pay Wages on Termination | $5,011,195 |
| Failure to Pay Sick Wages | $1,746,900 |
| Attorneys' Fees | $4,077,922 |
| **Total** | **$20,389,612** |

50. Based on the allegations in Plaintiff's Complaint, the $5 million jurisdictional amount requirement of the CAFA is met.

51. Defendant provides the foregoing calculations only to demonstrate that the amount in controversy here easily exceeds the amount in controversy requirement of the CAFA. Defendant makes no admission of any liability or damages with respect to any aspect of this case, nor does it endorse or concede that the proffered methodology for such calculations passes muster.

## V. REMOVAL PROCEDURES/VENUE

51. Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 85(d), 1441(a), and 1446(a). Plaintiffs originally brought this action in the Superior Court of the State of California, County of Orange. The appropriate assignment of this action is to the Central District of California.

## VI. NOTICE TO PLAINTIFF AND STATE COURT

52. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District, as required by 28 U.S.C. § 1446(d), written notice of this Notice of Removal is being promptly served upon counsel for Plaintiffs and a copy of this Notice of Removal is being filed with the Clerk of the Superior Court of the State of California for the County of Orange.

53. WHEREFORE, Defendant prays that the Court remove this civil action from the Superior Court of the State of California, County of Orange, to the United States District Court for the Central District of California.

Dated: September 29, 2022

K&L GATES LLP

By: ______________________________

Gene Ryu
Penny Chen Fox
Paul Suh
Attorneys for Defendant
MONROE OPERATIONS, LLC